UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

OUCHO SAELEE and LAI CHIEM SAELEE,

Petitioners,

v.

JULIO HERNANDEZ, et al,

Respondents.

CASE NO. 2:26-cv-00735-TL

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS AND INJUNCTIVE RELIEF

This matter arises from Respondents' indication that they are preparing to exercise their prosecutorial discretion to deport Petitioners—two non-violent, medically impaired grandparents—to Laos, a country Petitioners fled as teenage refugees. This decision is despite Respondents allowing Petitioners to remain and build their lives in the United States as upstanding members of their community for 25 years while their removal orders could not be enforced. The matter is before that Court on a Petition for Writ of Habeas Corpus and Injunctive Relief (Dkt. No. 1) filed by Petitioners, Oucho Saelee ("Petitioner Oucho") and Lai Chiem

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS AND INJUNCTIVE RELIEF – 1

Saelee ("Petitioner Lai"). Respondents are Julio Hernandez, Enforcement and Removal Operations ("ERO"), Acting Seattle Field Office Director, U.S. Immigration and Customs Enforcement ("ICE"); Markwayne Mullin, Secretary, U.S. Department of Homeland Security; U.S. Department of Homeland Security ("DHS"); Todd Lyons, Acting Director and Senior Official Performing Duties of Director of ICE; and United States Immigration and Customs Enforcement ("ICE").

To remove Petitioners from their U.S. citizen children, grandchildren, and loved ones and return them to the country of their birth, a country that denies them citizenship, is an action that many would call cruel and heartless. It is also an action that the law does not require. Rather, discretion is given to DHS—and not this Court—to decide whether to execute Petitioners' decades-old removal orders or allow them to remain in their communities on their present Orders of Supervision ("OSUP"), with which they have flawlessly complied for 25 years.

Having considered the petition, Respondents' return (Dkt. 5), Petitioners' traverse (Dkt. No. 8), and the relevant record, the Court finds it lacks the authority to grant relief and therefore DENIES the petition.

## I.    BACKGROUND

Petitioners are formerly married stateless refugees from Laos, both born in 1961. Dkt. No. 1 ¶ 4, 17. In 1975, the Communist group Pathet Lao took over Laos, posing a threat to Petitioners. *Id*. ¶ 18. During the "Secret War," the United States recruited ethnic minorities in Laos to fight alongside the United States against the Pathet Lao. *Id*. Soldiers of Pathet Lao began targeting villages and ethnic minorities like Petitioners' families, leaving such families no choice but to hide and flee from Laos. *Id*. Petitioners took refuge in the Bannanyo refugee camp in Thailand, where they met and got married. *Id*. ¶ 19. In 1980, Petitioners immigrated to the United States, settling in Kansas and becoming lawful permanent residents shortly after their

arrival. *Id.* ¶ 20. In the years after their arrival to the United States and move to Washington, Petitioners had four children together, all of whom are United States citizens.[1] *Id.* ¶ 21. Despite working long days at various jobs, Petitioners struggled to support their family. *Id.* ¶ 22. As such, a member of their community convinced them to engage in a drug importation scheme. *Id.* ¶ 23. In 1992, Petitioners were arrested, and on January 27, 1993, they were convicted of several non-violent opium-related offenses in this District. *Id.* Petitioners were each sentenced to the mandatory minimum of ten years. *Id.* ¶ 24. Both Petitioners contest the circumstances and validity of their convictions and are currently pursuing post-conviction relief. *Id.* ¶ 23.

As a result of Petitioners' convictions from 1993, an immigration judge ("IJ") ordered them removed from the United States—Petitioner Lai's removal order became final on September 23, 1994, and Petitioner Oucho's became final on April 27, 2000.[2] *Id.* ¶¶ 10, 11, 25. After Petitioners' prison sentences were completed, they were held in immigration detention. However, because there was no repatriation agreement between Laos and the United States, Petitioners could not be removed, and they were released on orders of supervision. Dkt. No. 1 ¶ 26.

Since their release in 2001, Petitioners have fully complied with their release conditions and have not committed any crimes. *Id.* ¶¶ 23, 29. Petitioners' OSUP conditions included appearing before the legacy Immigration and Naturalization Service ("INS"); taking government phone call check-ins and appearing for in-person check-ins; complying with a prohibition against traveling outside of Washington without notifying INS; keeping INS updated about all changes of address and employment; abiding by all laws; and reporting any arrests to INS. *Id.* ¶ 27.

---

[1] Petitioners divorced in 2001. Dkt. No. 1 ¶ 28. Petitioner Lai had a fifth child in 2003 and is now married to a U.S. citizen. *Id.* ¶ 34. Petitioner Lai and her husband have been together over fourteen years. *Id.*

[2] Petitioner Lai filed an appeal to the Board of Immigration Appeals ("BIA"), but it was dismissed on April 4, 1995. Dkt. No. 7-1 (Strzelczyk Decl.) ¶ 5. Petitioner Oucho waived his appellate rights. *Id.* ¶ 4.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS AND INJUNCTIVE RELIEF – 3

Respondents concede that "Petitioners have continued reporting since their release more than twenty years ago . . . ." Dkt. No. 7-1 (Strzelczyk Decl.) ¶ 6.

For over two decades, Petitioners have been productive members of their community, maintaining jobs and spending significant time with their children and five grandchildren. *Id*. ¶¶ 33–36. But as they've aged, Petitioners have both experienced serious health conditions. *Id*. ¶ 38–39. Petitioner Oucho was injured working construction when a boom fell and hit his head, resulting in a traumatic brain injury. *Id*. ¶ 38. He is on leave from work and suffers from headaches, dizziness, and nausea. *Id*. His conditions require continued visits to an Occupational Medicine Doctor and Neurologist. *Id*. In 2018, Petitioner Lai was diagnosed with breast cancer. *Id*. ¶ 39. She underwent surgery, chemotherapy, and radiation, and now requires ongoing medical monitoring. *Id*. Following her cancer diagnosis, Petitioner Lai suffers from balance issues and migraines. *Id*.

Although Petitioners have been on OSUPs for 25 years, the potential for their removal has recently changed. Until this year, Laos accepted very few people for repatriation from the United States. *Id*. ¶ 42. In June of 2025, President Donald Trump stated, "Laos has historically failed to accept back its removable nationals." *Id*. ¶ 44. As a result, he included Laos in his travel ban, which banned all Laos immigrants, tourists, students, and exchange visitors from entering the United States. *Id*. In response, the government of Laos issued travel documents to a few dozen nationals of Laos with final removal orders. *Id*. Petitioners assert that recent reports from Laotian immigrants indicate that Laos has recently been issuing travel documents at an unprecedented rate. *Id*. ¶ 46. Petitioners present evidence, uncontested by Respondents, that individuals removed to Laos from the United States are not given passports (Dkt. No. 1-1 (Ha Decl.) ¶¶ 14, 21), are treated as stateless (*id*. ¶ 21), are not allowed to own property (*id*. ¶ 20), and are subject to indefinite detention in a military facility unless they can find a sponsor who is

Laotian (*id.* ¶¶ 15, 18–19; Dkt. No. 1-2 (Potter Decl.) ¶¶ 4–6).

At their most recent ICE check-ins, Petitioners were required to fill out travel paperwork for potential removal to Laos. Dkt. No. 1 ¶ 52. Petitioner Oucho's next ICE check-in is April 21, 2026, and Petitioner Lai's is June 30, 2026. *Id*. Petitioners allege that ICE officers were recently observed surveilling the home and neighborhood of Petitioner Oucho. *Id*. ¶ 2. Respondents do not contest this allegation. Respondents represent that they do not currently have travel documents for Petitioners and state that "ICE does not intend to detain Petitioners without first securing a travel document." Dkt. No. 5 at 3. Nevertheless, Petitioners fear they will be detained at their upcoming check-in appointments, prompting them to file the instant petition.

## II.    LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance of the evidence that they are entitled to relief, *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)—that is, that they are "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c)(3).

## III.    DISCUSSION

Before it can consider a matter on the merits, the Court "has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Respondents argue that Petitioners are essentially asking the Court to enjoin execution of their lawful removal orders, and that, accordingly, 8 U.S.C. § 1252(g) strips the Court of jurisdiction from ruling on Petitioners' requests. Dkt. No. 5 at 3.

Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any [noncitizen] arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or *execute removal orders* against any [noncitizen]." 8

U.S.C. § 1252(g) (emphasis added). The Supreme Court has construed Section 1252(g) to apply only to those three specified actions, stressing that the statutory aim is to prevent "attempts to impose judicial constraints upon prosecutorial discretion." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482, 485 n.9 (1999); *see also Arce v. United States*, 899 F.3d 796, 800–801 (9th Cir. 2018) (holding that Section 1252(g) is limited to the three specific *discretionary* actions). The Ninth Circuit has confirmed that Section 1252(g) prevents district courts from interfering with the execution of removal orders, including their timing. *See Rauda v. Jennings*, 55 F.4th 773, 776–78 (9th Cir. 2022). In *Rauda*, the Ninth Circuit affirmed a district court finding that the court lacked jurisdiction to hear the petitioner's request to enjoin the government from removing him until the Board of Immigration Appeals ("BIA") ruled on his motion to reopen removal proceedings. *Id*. at 775. The Ninth Circuit found that Section 1252 "does not include any temporal caveats," and agreed with a Third Circuit observation that "the discretion to decide *whether* to execute a removal order includes the discretion to decide *when* to do it. Both are covered by the statute." *Id*. at 777 (quoting *Tazu v. Att'y Gen. U.S.*, 975 F.3d 292, 297 (3d Cir. 2020)).

Petitioners contend that they "do not challenge their final orders of removal" but rather "seek procedural protections against inappropriate and unlawful detention." Dkt. No. 8 at 4. Only if this characterization is correct can the Court consider the habeas petition. Accordingly, before considering the merits of Petitioners' claims, the Court must answer the threshold question of whether the asserted claims challenge Petitioners' potential future detention or challenge the execution of their removal order.

The Court agrees with Respondents that the essence of this petition challenges the timing of execution of removal, not the fact or process of detention. Throughout the petition, Petitioners make it clear that they want the Court to make a decision that interferes with when Respondents

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS AND INJUNCTIVE RELIEF – 6

can decide to execute Petitioners' removal orders. This is most obvious from the relief they seek: an Order from the Court that they may not be re-detained without advance notice of six months to one year, as well as a pre-detention hearing. *See* Dkt. No. 1 at 28. Petitioners point to no authority for the principle that due process could ever require six months' notice—or even one month's notice—and the Court is aware of none. Even in *Chhoeun v. Marin*, 442 F. Supp. 3d 1233 (C.D. Cal. 2020) (which was decided before *Rauda*), a case cited by Petitioners, the court granted only 2 weeks of advanced notice (similar to Petitioners, the *Chhoeun* petitioners had been in the United States for many years). *Chhoeun*, 442 F. Supp. 3d at 1242.

Petitioners do not seek a reasonable runway to be prepared for detention, they seek time to fight their removal. They argue they are "entitled" to "the ability to contact attorneys, file necessary petitions, and pursue legal relief connected to their detention." Dkt. No. 1 ¶ 82. But Petitioners *have* attorneys and have filed the petition best-suited to their detention: a petition for habeas corpus. The real purpose of the extended reprieve Petitioners request is to "wrap up their affairs with their families" and "pursue post-conviction legal relief" that could prevent their removal. *Id*. ¶ 86. But these goals, and the time needed to pursue them, exists independently of the threat of detention. Petitioners do not want and need an injunction because Respondents might detain them, they want and need an injunction because Respondents might be preparing to deport them. If detention were removed from the equation entirely—for example, if Respondents ordered Petitioners to report to the airport and board a deportation flight without ever detaining them—this need would be no less acute. (Notably, Petitioners have not actually alleged any basis on which their hypothetical future detention would be unlawful, except for the circular argument that Respondents would detain them without the particular process Petitioners seek—a pre-detention hearing plus a legally unsupported notice period of six months or more in which to challenge their removal.)

In short, Petitioners' request arises purely "from the decision or action by the [Secretary of DHS] to . . . execute removal orders," and the Court cannot grant the petition without interfering with this discretionary action. If it granted such a request, and Respondents subsequently determine that Petitioners will be removed in the reasonably foreseeable future, Respondents then have to abide by a Court order to *wait* an additional six months to one year and hold a hearing *before* they can execute Petitioners' removal, even if they are prepared to do so immediately. Such an order would do precisely what the Ninth Circuit says this Court does not have jurisdiction to do—interfere with *when* Respondents can execute a removal order. *See Rauda* 55 F.4th at 777.

Petitioners' primary reason for needing such an amount of time is because they assert that they are "entitled" to "the ability to contact attorneys, file necessary petitions, and pursue legal relief connected to their detention" all in advance of when removal is executed. Dkt. No. 1 ¶ 82. Such a rationale is, again, barred by *Rauda*, in which the Ninth Circuit found that the district court did not have jurisdiction to enjoin the execution of a removal order until the BIA ruled on the petitioner's motion to reopen removal proceedings. *Rauda* 55 F.4th at 777. Here too, Petitioners seek an injunction, so that they can, among other things, move to reopen removal proceedings. Dkt. No. 8 at 8 ("They need advance notice if and when ICE secures a travel document so that they may pursue their legal claims . . . in reopened removal proceedings."). Even Petitioners' intention to seek post-conviction relief is functionally the same as what the petitioner in *Rauda* sought because, here too, Petitioners seek a court order that says that, even if Respondents find that removal will occur in the reasonably foreseeable future and want to execute Petitioners' removal, Respondents still must wait before executing it, so that Petitioners have time to "pursue post-conviction legal relief." *See* Dkt. No. 1 ¶ 86.

Petitioners argue in their traverse that they "seek protection from re-detention in violation of their due process rights, not any interference with their removal orders or Respondents' legal rights to enforce them." Dkt. No. 8 at 3. Petitioners cite to several cases from this District where habeas was granted under what they characterize as similar circumstances. *See id*. at 3 (citing *Tesara v. Wamsley*, No. C25-1723, 2025 WL 3288295 at *3 (W.D. Wash. Nov. 25, 2025)), 5 (citing *Yang v. Scott*, No. C26-469, 2026 WL 632661 at *2 (W. D. Wash. Mar. 6, 2026) and *Arenado-Borges v. Bondi*, No. C25-2193, 2025 WL 3687518 at *2–3 (W. D. Wash. Dec. 19, 2025)). But all of these cases are distinguishable.

The six-month-to-one-year timeline Petitioners seek, and the reasons for such a timeline, distinguish the instant case from *Tesara* and *Yang*. In neither of those cases did the petitioner ask for such extended notice in order to contact attorneys, seek legal relief in other courts, say goodbye to their family, and get their personal affairs in order. Instead, those petitioners simply argued that due process required that they be afforded notice and a hearing before re-detention. *See Tesara*, 2025 WL 3288295 at *3 (petitioner "s[ought] judicial review of the procedure by which he was re-detained by an ICE officer without notice and a hearing before a neutral decisionmaker" and asked that the court order he not be re-detained without first being given notice and a hearing); *Yang*, 2026 WL 632661, *5 ("Yang asks the Court for an order prohibiting his future re-detention absent notice and a hearing.").

The *Arenado-Borges* case is also distinguishable. The petitioner in that matter asked the court to "prohibit the Government from removing or seeking to remove him to a third country 'without notice and meaningful opportunity to respond in compliance with the statute and due process in reopened removal proceedings.'" *Arenado-Borges*, 2025 WL 3687518 at *1. The court granted that request, finding that "to comply with due process, ICE must provide notice and a meaningful opportunity for the petitioner to present any claim of fear of persecution or

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS AND INJUNCTIVE RELIEF – 9

harm upon removal to a newly designated third country." *Id*. at 6. The court further found that "[i]f a noncitizen claims fear of removal to a designated third country, courts in this district have repeatedly held that ICE must give the petitioner an opportunity 'to pursue [a] claim for withholding of deportation in reopened removal proceedings before an immigration judge." *Id*. (citation modified). Petitioners here are not seeking to prevent removal to a third country; thus *Arenado-Borges* is not analogous.

Additionally, Petitioners cite to Supreme Court cases to assert that the type of notice requested is not barred by lack of jurisdiction. *See* Dkt. No. 1 ¶ 81 (citing *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) and *A. A. R. P. v. Trump*, 605 U.S. 91, 95 (2025)). However, in the Supreme Court cases cited by Petitioner, the notice referenced was in the context of receiving notice before removal—not before detention—in time to seek habeas relief, not so that the detainees could seek to overturn criminal convictions, or move to reopen removal proceedings in immigration court, like Petitioners seek here. *See J. G. G.*, 604 U.S. at 671, 673; *A. A. R. P. v. Trump*, 605 U.S. at 95.

In sum, this Court will not order that Respondents cannot re-detain Petitioners at their next appointments and must give six months' to a years' worth of notice and a pre-deprivation hearing, because to do so would usurp the executive's discretion as to *whether* to execute a removal order and *when* to do it—something this Court has no jurisdiction to do. *See Rauda* 55 F.4th at 777. That is particularly the case where the *reason* Petitioners ask for such extensive notice is so that they can pursue separate avenues of relief in hopes of preventing their removal altogether (in this case, attempts to reopen removal proceedings and challenge criminal convictions (*See* Dkt. No. 1 ¶ 86; Dkt. No. 8 at 8) that appear to not yet have been initiated (*see generally* Dkt. Nos. 1, 8). The *Rauda* court made it clear that such an injunction is outside the district court's jurisdiction, and that ruling is binding on this Court. *See Rauda*, 55 F.4th at 775.

To be clear; however, this Order does not negate Respondent's obligation to afford Petitioners any due process required by law prior to any future re-detention. Respondents are expected to provide Petitioners with due process in any re-detention procedure. Further, the Court expects that Respondents will abide by the representations made by their counsel as an officer of Court as supported by a declaration from a representative of DHS that "ICE does not intend to detain Petitioners without first securing a travel document." Dkt. No. 5 at 3 (citing Dkt. No. 7-1 ¶ 8); *see also* Dkt. No. 5 at 2 ("To be clear, DHS does not currently have travel documents for Petitioners and does not intend to detain Petitioners without first securing a travel document.").

## IV.    CONCLUSION

Petitioners have lived peacefully in this country for 25 years. *See* Dkt. No. 1 ¶ 71. They made a serious mistake over thirty years ago, paid their debt to the community through serving their lengthy prison sentences, and have more than redeemed themselves for their past non-violent wrongs. They are, unquestionably, contributing members of society here in the United States who have developed deep community ties through employment, familial relationships, home ownership, and much more. *Id*. Yet, in what many would see as an inhumane decision, Respondents feel the need to remove Petitioners to a country Petitioners do not call home and where they will be at risk of serious mistreatment. *See id*. ¶ 48. Due to Congress's jurisdiction-stripping provision, this Court's hands are tied, and it has no choice but to stand by while this occurs. Upholding its duty to follow the laws of our country, the Court must DENY Petitioners' petition.

Dated this 17th day of April, 2026.

Tana Lin
United States District Judge

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS AND INJUNCTIVE RELIEF – 11